WO                                                                              KM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DaJuan Williams, | No. CV 19-05096-PHX-MTL (CDB) |
| Plaintiff, | |
| v. | **ORDER** |
| David Winget, et al., | |
| Defendants. | |

On September 5, 2019, Plaintiff DaJuan Williams, who is confined in the Arizona State Prison Complex-Eyman, filed a pro se "Motion for Leave to File Excess Pages for Complaint," a Motion for Temporary Restraining Order and Preliminary Injunction, and an Application to Proceed In Forma Pauperis, and lodged a 54-page civil rights Complaint pursuant to 42 U.S.C. § 1983. In a September 17, 2019 Order, the Court granted the Application to Proceed; denied the Motion to File; denied the Motion for Temporary Restraining Order; took no action on the Motion for Preliminary Injunction; and gave Plaintiff 30 days to file a Complaint containing no more than 30 pages. On October 15, 2019, Plaintiff filed a Complaint. In a January 15, 2020 Order, the Court dismissed the Complaint with leave to amend.

On January 24, 2020, Plaintiff filed a First Amended Complaint (Doc. 16). The Court will order Defendants Winget, Tribolet, Verdugo, Valencia, Villanueva, Cornejo, and Lopez to answer the excessive force claims in Counts One through Seven of the First

Amended Complaint and will dismiss the remaining claims and Defendants without prejudice. The Court will also deny without prejudice Plaintiff's Motion for Preliminary Injunction (Doc. 5).

**I.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent

standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## II. First Amended Complaint

Plaintiff names the following Defendants in his 21-count First Amended Complaint: Sergeants Winget and Bernardo Villanueva; Correctional Officers (CO) II Tribolet, Verdugo, Valencia, Ruben Cornejo, and Jose Lopez; COs III Michael A. Kinney, Plancarte, Shy, and Rowley; CO IV Eva K. Sheridan; Deputy Warden Panann Days; Arizona Department of Corrections (ADC) Director David Shinn; Captain J. Silves; Medical Providers Joan Grafton, Natalya Weigel, and Adolfo Oritz; and Maintenance Employees Taylor and Aventniti. Plaintiff seeks money damages and declaratory and injunctive relief.

## III. Discussion

### A. Counts One through Four

Plaintiff alleges that between May and October 2018, Defendants Winget (Count One), Tribolet (Count Two), Verdugo (Count Three), and Valencia (Count Four) violated his Eighth Amendment rights when, in retaliation for Plaintiff assaulting staff, each Defendant used derogatory and offensive slurs towards Plaintiff and engaged in excessive force by "banging the gurney in which [Plaintiff] was strapped and secured to face down, in shackles and handcuffs, into walls and structures and attempting to br[eak] [Plaintiff's] arm when [Plaintiff's] elbow was slammed into and caught on the bars of the wing gate." (Doc. 16 at 5, 6, 7, 8.) Plaintiff also claims each Defendant "forcefully applied contaminated, unsanitary, and bio-hazardous clippers to [Plaintiff's] face and 'force shav[ed Plaintiff] and . . . denied [him] basic human necessities by refusing to provide [Plaintiff with] food[,] . . . a mattress[,] . . . hygiene items[,] . . outdoor recreation[,] . . . showers[,] . . . cleaning supplies[,] . . . hair or nail clippers[,] . . . [and] water during outdoor recreation in temperatures in excess of 100 [degrees]." (*Id.*) Plaintiff claims each Defendant also manufactured evidence, falsified official reports, and caused a hostile environment by condoning all of the above actions. (*Id.*)

TERMPSREF

- 3 -

### 1. Retaliation

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Plaintiff claims he was retaliated against for assaulting a detention officer. Assault is not protected conduct and Plaintiff therefore fails to state a retaliation claim.

### 2. Verbal Harassment

"'Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.'" *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (quoting *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979)); *see also*, *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (mere threatening language and gestures do not, even if true, amount to constitutional violations); *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973) (the use of words, no matter how violent, does not comprise a § 1983 violation). Accordingly, to the extent Plaintiff alleges Defendants Winget, Tribolet, Verdugo, and Valencia used derogatory and offensive slurs towards Plaintiff, he fails to state a claim for relief.

### 3. Excessive Force

Liberally construed, Plaintiff has adequately stated an Eighth Amendment excessive force claim against Defendants Winget, Tribolet, Verdugo, and Valencia for allegedly banging him into walls and doorways while he was strapped to a gurney, with the intent to injure him, and in force-shaving Plaintiff's face. The Court will require Defendants Winget, Tribolet, Verdugo, and Valencia to answer these portions of Counts One, Two,

Three, and Four, respectively.

### 4. Conditions

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test. "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

To the extent Plaintiff claims Defendants denied him "basic human necessities" such as hygiene items and cleaning supplies, outdoor recreation, and water during recreation times, his allegations are insufficient to state a claim for relief. Plaintiff does not allege facts showing the deprivations caused a substantial risk of serious harm to Plaintiff, of which Defendants were aware, and that each Defendant failed to act. With respect to Plaintiff's claims regarding meals, bedding, outdoor recreation, and showers, Plaintiff does not allege specific facts regarding when or for how long he was denied these items or activities. The Court will dismiss Plaintiff's conditions of confinement claims in Count One.

### B. Counts Five through Seven

In Counts Five through seven, Plaintiff alleges that on May 8, 2018, Defendants Villanueva (Count Five), Cornejo (Count Six), and Lopez (Count Seven) violated his Eighth Amendment rights when they used excessive force on Plaintiff. Plaintiff claims that while he was handcuffed and held by other officers, Defendants screamed racial slurs

at Plaintiff, grabbed the collar of his clothes, choked him, and attempted to shove his clothing into his mouth and down his throat. (Doc. 16 at 9, 10, 11.) Plaintiff states he was unable to resist or defend himself. Plaintiff states he was also denied a "decontamination process" after he was sprayed with chemical agents in his head and face, which caused burning to his skin and eyes and difficulties breathing. Plaintiff asserts Defendants also discarded all of Plaintiff's personal property and clothing and placed Plaintiff into a bare cell, "barefooted and with no bedding, linen, or basic hygiene necessities or toilet paper while [Plaintiff] was still covered in chemical agents and unable to move, laydown, or attempt to sleep without suffering severe . . . burning and irritation." (*Id.*) Plaintiff further contends Defendants falsified reports and fabricated evidence, "and/or watched, condoned, and failed to intervene and/or . . . participated [in] any one or all of these acts and events." (*Id.*)

### 1. Excessive Force

Liberally construed, Plaintiff has adequately stated an Eighth Amendment excessive force claim against Defendants Villanueva, Cornejo, and Lopez for allegedly choking Plaintiff and attempting to shove Plaintiff's clothing into his mouth and throat. The Court will require Defendant Villanueva, Cornejo, and Lopez to answer these portions of Counts Five, Six, and Seven, respectively.

### 2. Conditions of Confinement

Whether conditions of confinement rise to the level of a constitutional violation may depend, in part, on the duration of an inmate's exposure to those conditions. *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months.")).

With respect to Plaintiff's claims regarding a "decontamination process," and being placed in a cell without personal property, clothing, bedding, linen, basic hygiene items or toilet paper, Plaintiff's allegations are too vague to state a claim because Plaintiff does not

allege for what length of time he was subjected to the conditions. The Court will dismiss these portions of Counts Five, Six, and Seven.

### C. Counts Eighth through Eleven

In Counts Eight through Eleven, Plaintiff alleges that from May through October 2018, Defendants Kinney (Count Eight), Plancarte (Count Nine), Sheridan (Count Ten), and Days (Count Eleven) violated his Eighth Amendment rights by showing confidential grievance documents to unauthorized staff or inmates, wrongfully intercepted grievance documents, refused to process legitimate and properly filed grievances, signed off on grievances without documentation, and otherwise barred access to the grievance process. Plaintiff asserts Defendants Kinney, Plancarte, and Sheridan also failed to correct unlawful conduct thereby allowing Defendant Tribolet and other officers to "retaliate, terrorize, and abuse [Plaintiff] repeatedly." (Doc. 16 at 12, 13, 14, 15.)

Prisoners have a First Amendment right to file prison grievances, *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005), but "[t]here is no legitimate claim of entitlement to a grievance procedure," *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), and the failure to follow grievance procedures does not give rise to a due process claim. *See Flournoy v. Fairman*, 897 F. Supp. 350, 354 (N.D. Ill. 1995) (jail grievance procedures did not create a substantive right enforceable under § 1983); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986) (violations of grievance system procedures do not deprive inmates of constitutional rights). "[N]o constitutional right was violated by the defendants' failure, if any, to process all of the grievances [plaintiff] submitted for consideration." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). In addition, "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials. Moreover, the First Amendment's right to redress of grievances is satisfied by the availability of a judicial remedy." *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003); *see also Ashann-Ra v. Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) (failure to comply with state's grievance procedure is not actionable under § 1983 and does not compromise an inmate's right of access to the

courts).

Plaintiff's allegations in Counts Eight through Eleven pertain only to the handling of his grievances. Accordingly, the Court will dismiss Counts Eight through Eleven for failure to state a claim, as well as Defendants Kinney, Plancarte, and Sheridan.

### D.    Counts Twelve through Fifteen

In Count Twelve, Plaintiff alleges his Fourteenth Amendment rights have been violated by Defendant Shinn's policies regarding inmate disciplinary hearings. Plaintiff claims that although the disciplinary regulations allow inmates to present witnesses or witness statements, inmates are not entitled to these procedures and cannot demand them. Plaintiff also claims that appeals based on due process challenges are routinely denied as long as an inmate is provided 48 hours written notice before the disciplinary hearing. (Doc. 16 at 16.) Plaintiff asserts disciplinary hearings are presided over by a correctional officer with the rank of "captain," who cannot be impartial when evaluating the actions of subordinate officers, especially in cases involving staff assaults. Plaintiff further argues disciplinary convictions can be based solely on the accusing officer's disciplinary report and this "is not evidence by definition." (*Id.* at 17.) Plaintiff contends that other than "a very limited witness process, in which [inmates] are solely reliant on the disposition and diligence of staff, policy does not allow for inmates to put on a defense, present evidence, or to otherwise factually dispute or challenge the alleged evidence against them." (*Id.*) Plaintiff asserts convictions are upheld "regardless of whether there was any evidence actually presented at the hearing." (*Id.*)

Plaintiff alleges inmates can be charged and found guilty of felony offenses and "authorization is granted to the DHO to assess penalties for felony violations, to include restitution, with the exception of an event involving actual escape . . . [T]here is no statute explicitly granting authority to the Director of ADC . . . to determine [or] issue . . . lawful and binding restitution orders." (*Id.*) Plaintiff claims inmates "have been assessed restitution amounts in excess of $20,000.00 and $30,000. Simply based upon a 'more probably true than not' finding by a single individual" whose impartiality is questionable.

(*Id.* at 17-18.)

In Counts Thirteen through Fifteen, Plaintiff alleges Defendants Shy (Count Thirteen), Rowley (Count Fourteen) and Silves (Count Fifteen), violated his Fourteenth Amendment rights when they deprived Plaintiff of adequate notice of a disciplinary hearing, a meaningful opportunity to prepare a defense, call witnesses, investigate, access evidence to be used against him, and access exculpatory evidence and video. (*Id.* at 19, 20, 21.) Plaintiff also claims the disciplinary appeals process was inadequate, "constitutionally unsound and serves no legitimate penological interest." (*Id.*) Plaintiff contends this caused him to lose all of his good time credits and to be placed in "parole class III, where [he] is not eligible to earn good time . . . credits for a total of 516 days." (*Id.*) Plaintiff argues this extends his prison sentence and states he has been placed in "enhanced security" and housed in a "super maximum custody 'lock down' unit for an extended and indefinite period of time." (*Id.*) Plaintiff argues these are atypical and significant hardships.

"[A] state prisoner seeking injunctive relief against the denial or revocation of good-time credits must proceed in habeas corpus, and not under § 1983." *Nonnette v. Small*, 316 F.3d 872, 875 (9th Cir. 2002). In addition, if a judgment for Plaintiff regarding the denial of due process in a prison disciplinary proceeding would invalidate or imply the invalidity of the deprivation of good-time credits, the claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), unless Plaintiff can show that the disciplinary conviction has been previously invalidated. *See Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997); *Heck*, 512 U.S. at 486-87; *Nonnette*, 316 F.3d at 875. *See also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)–no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)– *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.").

Plaintiff's disciplinary claims, if decided in his favor, would either invalidate or

1  imply the invalidity of the deprivation of his good-time credits. Because Plaintiff has not demonstrated that his prison disciplinary proceeding has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus, his claims are barred by *Heck*. Therefore, the Court will dismiss Counts Twelve, Thirteen, Fourteen, and Fifteen, as well as Defendants Shinn, Shy, Rowley, and Silves.

### E. Counts Sixteen through Seventeen

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical

malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

### 1. Count Sixteen

In Count Sixteen, Plaintiff alleges Defendant Grafton violated his Eighth Amendment rights when, for non-medical reasons, she denied him treatment for degenerative joint disorder in his lower spine. Plaintiff claims Defendant Grafton "repeatedly failed and refused to provide previously prescribed treatment and care . . . ordered and provided by another physician for . . . the same conditions, causing [Plaintiff] unnecessary, wanton, and sadistic physical and mental pain and suffering for over 19 months." (Doc. 16 at 22.) Plaintiff claims he suffers excruciating pain in his back and body, as well as anxiety, stress, and frustration. Plaintiff states he has difficulty sitting, standing, moving around, and functioning "at a normal level" without severe pain and this prevents him from accepting "any job or physical programming assignments in the prison." (*Id.*)

Plaintiff's allegations in Count Sixteen are too vague to state a claim. Plaintiff does not allege the "non-medical" reasons Defendant Grafton relied on to deny him medical treatment, describe the specific medical treatment he sought, or allege whether he was offered or received alternative medical treatments. The Court will dismiss Count Sixteen for failure to state a claim, as well as Defendant Grafton.

### 2. Counts Seventeen and Eighteen

Plaintiff alleges Defendants Weigel (Count Seventeen) and Ortiz (Count Eighteen) violated his Eighth Amendment rights when, for non-medicals reasons, they denied him "medical health care and treatment for . . . bilateral arthritis in both of [Plaintiff's] knees

1   and a history of pain and suffering in [his] knees and difficulty moving around." (*Id.* at 23,
2   24.) Plaintiff asserts Defendants Weigel and Ortiz denied his request for a Special Needs
3   Order that prohibits him from being required to kneel on the floor to be shackled when
4   "being forced to do so up to 10 times a day is causing [Plaintiff] unnecessary and reasonable
5   avoidable pain and suffering and is contributing to the unnecessary and wanton worsening
6   and/or aggravation of [his] medical condition and when there is no legitimate penological
7   interest in requiring [him] to kneel down on both knees on the floor and ground." (*Id.*)

Plaintiff does not allege when he requested the Special Needs Order from Defendants Weigel or Ortiz, when his request was denied, the reasons Weigel or Ortiz gave for denying his request for a Special Needs Order, or whether he was offered any alternative to the Special Needs Request Order. Plaintiff's allegations are too vague to state an Eighth Amendment medical care claim and the Court will dismiss Counts Seventeen and Eighteen, as well as Defendants Weigel and Ortiz .

### F.     Counts Nineteen through Twenty-One

Plaintiff alleges Defendant Taylor (Count Nineteen), Aventniti (Count Twenty), and Days (Count Twenty-One) violated his Eighth Amendment rights when each "knew and was aware of the mold problem in the drain/pipes of the sink in cell 1 dog #28 and/or should have been aware and, placed [Plaintiff] into this cell anyway." (*Id.* at 25, 26, 27.) Plaintiff alleges he notified each Defendant and "made repeated request[s] for assistance and resolution" but Defendants "refused to investigate or asses the problem." (*Id.*) Plaintiff also contends Defendants falsified documents, misrepresented the mold problem and its extent, failed to properly investigate the problem or take it seriously, failed to "order correction" of the problem, and willfully endangered Plaintiff's health and safety. (*Id.*)

As noted earlier, a showing of deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Farmer,* 511 U.S. at 837. Plaintiff claims Defendants were aware of the presence of mold, but he does not allege that any of the Defendants were aware of a substantial harm of serious risk. Plaintiff does not

allege that he suffered any injury from the alleged presence of mold or that he communicated any such injury Defendants Taylor, Aventniti, or Days. Moreover, Plaintiff does not allege facts showing that Defendants Taylor or Aventniti, whom he describes as maintenance employees, had any authority to authorize Plaintiff's transfer to a difference cell or to authorize funds for maintenance repairs.

The Court will dismiss Counts Nineteen, Twenty, and Twenty-One for failure to state a claim, as well as Defendants Taylor, Aventniti, and Days.

## IV. Motion for Preliminary Injunction

To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 21 (2008). The moving party has the burden of proof on each element of the test. *Environmental Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

Plaintiff seeks an order requiring Defendants to "remove and expel the mold infestation existing in the drain and/or pipes of the sink located in Plaintiff's cell." Because the Court has dismissed Plaintiff's mold claims from the First Amended Complaint, Plaintiff has failed to show he is likely to succeed on the merits of that claim. The Court will therefore deny the Motion for Preliminary Injunction.

## V. Warnings

### A. Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a *non*-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C.  Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.  Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) The following claims and counts in the First Amended Complaint are **dismissed** without prejudice:

  (a) the retaliation, verbal abuse, and conditions of confinement claims in Counts One, Two, Three, and Four;

  (b) the conditions of confinement claims in Counts Five, Six, and Seven; and

  (c) Counts Eight through Twenty-One.

(2) Defendants Plancarte, Kinney, Sheridan, Days, Silves, Shy, Rowley, Grafton, Weigel, Ortiz, Taylor, Aventniti, and Shinn are **dismissed** without prejudice.

(3) Defendants Winget, Tribolet, Verdugo, Valencia, Villanueva, Cornejo, and Lopez must answer the excessive force claims Counts One through Seven, in their individual capacities, as described above.

(4) Plaintiff's Motion for Preliminary Injunction (Doc. 5) is **denied**.

(5) The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 16), this Order, and both summons and request for waiver forms for Defendants Winget, Tribolet, Verdugo, Valencia, Villanueva, Cornejo, and Lopez.

(6) Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(8) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(10) A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

1 (11) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

    (a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(12) Defendants Winget, Tribolet, Verdugo, Valencia, Villanueva, Cornejo, and Lopez must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(13) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

. . . .

. . . .

. . . .

. . . .

(14) This matter is referred to Magistrate Judge Camille D. Bibles pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 6th day of March, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge

TERMPSREF